IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

THERESA MARTIN,                    *
                                   *
       Plaintiff,                  *
                                   *
vs.                                *      CIVIL ACTION 07-00835-B
                                   *
MICHAEL J. ASTRUE,                 *
Commissioner of                    *
Social Security,                   *
                                   *
       Defendant.                  *

ORDER

Plaintiff Theresa Martin ("Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 et seq., and 1381 et seq. On September 10, 2008, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 16). Thus, this case was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73. (Doc. 17). Oral argument was waived. (Docs. 18, 19). Upon consideration of the administrative record, oral arguments and memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED.**

I.   Procedural History

Plaintiff protectively filed applications for disability

insurance benefits and supplemental security income on May 10, 2004. (Tr. 71-73, 305-307).  Plaintiff alleges that she has been disabled since August 25, 2003 due to diabetes, hypertension, back, leg, feet and hip pain and depression.  (Tr. 71, 127-128). Plaintiff's applications were denied initially. (Tr. 53-54, 308-309).  She timely filed a Request for Hearing before an Administrative Law Judge. (Tr. 60).  On February 15, 2006, Administrative Law Judge R. G. Goosens ("ALJ Goosens") held an administrative hearing which was attended by Plaintiff, her representative and a vocational expert. (Tr. 320-367).  On August 25, 2006, ALJ Goosens issued an unfavorable decision wherein he concluded that Plaintiff is not disabled. (Tr. 15-46).  Plaintiff requested review of the ALJ's decision, and on November 8, 2007, the Appeals Council ("AC") denied her request.  Thus, the ALJ's decision became the final decision of the Commissioner in accordance with 20 C.F.R. § 404.981. (Tr. 6-8).  The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  **Issues on Appeal**

A.   Whether the ALJ erred by failing to give controlling weight to opinions expressed by Plaintiff's treating physician.

B.   Whether the ALJ erred by failing to pose a complete hypothetical, which included all of Plaintiff's impairments, to the vocational expert.

C.     Whether the AC erred by denying review of the ALJ's in
       light of the new evidence submitted to the AC.

III. **Factual Background**

Plaintiff was born on August 6, 1953, and was 52 years old at
the time of the administrative hearing.   (Tr. 71, 305, 324).
Plaintiff has a 9th grade education[1] and is a Certified Nurse's
Assistant.   Plaintiff has past work experience as a nurse's
assistant, stock clerk and maid.  (Tr. 87-95, 103, 116, 133, 137,
325).

At the February 15, 2006 administrative hearing, Plaintiff
testified that she last worked as a housekeeper for Davis and Son
Janitorial.  According to Plaintiff, she lost this position because
she was no longer able to perform her job duties as a result of her
health problems.  (Tr. 327).

Plaintiff listed her health problems as hypertension, diabetes
and heart ailments.  (Tr. 327-328).  Plaintiff testified that she
suffers from depression, and that she has received treatment from
Mobile Mental Health ("MMH").   (Tr. 329-330).   Plaintiff also
testified that she hears voices, and experiences difficulty
sleeping, and loss of appetite. (Tr. 334-335). According to
Plaintiff, her diabetes causes her to experience hearing loss,

---

[1]While Plaintiff testified that she finished ninth grade,
the Vocational Rehabilitation Form dated November 1, 2004, and
the Disability Report dated August 24, 2005 state that she
finished 12th grade.  (Tr. 103, 133, 325)

dizziness, shortness of breath, blurred vision,"pre-ulcers" on the bottom of her feet and  swelling in her legs and ankles.  AS a result, she must wear a special shoe, and she is limited in her ability to walk.  (Tr. 332, 335-336).  Plaintiff's medications include Glucotrol XL, Glucophage, Metformin and Lotril (Tr. 329).

Plaintiff testified that she spends her time socializing with her 14 year-old daughter, and that she visits family and friends weekly.  She also testified that when she is not in pain, she does housekeeping, prepares meals, and helps to ready her daughter for school.  Plaintiff further testified that she bathes and dresses herself. (Tr. 333, 336, 345)

## IV.  Analysis

### A.  Standard of Review

In reviewing claims brought under the Act, this Court's role is a limited one.  The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).[2]  A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of

---

[2]This Court's review of the Commissioner's application of legal principles is plenary.  Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

fact must be affirmed if they are based upon substantial evidence. <u>Brown v. Sullivan</u>, 921 F.2d 1233, 1235 (11th Cir. 1991); <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[]"). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. <u>Chester v. Bowen</u>, 792 F. 2d 129, 131 (11th Cir. 1986); <u>Short v. Apfel</u>, 1999 U.S. DIST. LEXIS 10163 (S.D. Ala. 1999).

**B.   <u>Discussion</u>**

An individual who applies for Social Security disability benefits must prove his disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven her disability. 20 C.F.R. §§

404.1520, 416.920.[3]

In the case sub judice, the ALJ determined that while Plaintiff has the severe impairments of diabetes mellitus, degenerative disc disease of the lumbar spine, hypertension, and depression or adjustment disorder with depressed mood, they do not meet or medically equal the criteria for any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Regulations No. 4. (Tr. 45). The ALJ also determined that Plaintiff retains the residual functional capacity ("RFC") to perform light work, without

---

[3]The claimant must first prove that he or she has not engaged in substantial gainful activity.  The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience.  If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work.  Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986).  In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history.  Id. at 1005.  Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history.  Sryock v. Heckler, 764 F.2d 834 (11th Cir. 1985).  If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled.  Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).  See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

significant physical non-exertional limitations, and that Plaintiff was limited to jobs involving simple and repetitive unskilled work tasks, infrequent contact with the general public, and minimal changes in the work setting. Id. The ALJ concluded that Plaintiff is capable of performing her past relevant work as a stock clerk and maid. Id.

The relevant evidence of record reflects that Plaintiff was treated at Franklin Primary Health Center ("Franklin") from January of 2002 through June of 2004. An Adult History and Physical Form dated January 16, 2002, reflects that Plaintiff complained of ear ache and numbness in her hands. Her physical exam was normal except for inflammation of the tympanic membrane. She was diagnosed with diabetes mellitus, otitis and neuropathy. (Tr. 190-191).

A Pain Assessment Tool dated January 16, 2002 describes Plaintiff's pain as throbbing pain that comes and goes around her fingers and legs, and is made worse by walking. The report states that she is unable to sleep, and rates her pain as a "10" on a scale of 1 to 10. (Tr. 189). She returned on March 29, 2002, complaining of pain in her foot and an inability to sleep at night. Plaintiff rated her pain intensity score of "7." On physical examination, plantar calluses were noted, and she was diagnosed with diabetes mellitus and hypertension. (Tr. 187-188).

Treatment notes dated April of 2002 list Plaintiff's diagnoses as hypertension and diabetes mellitus. (Tr. 183-186). Plaintiff

was next seen at Franklin on July 23, 2002.  She reported dizziness and elevated glucose.  Her physical exam was normal, and pain intensity score was "0."  She reported a 6 to 7 month history of right lower extremity swelling, and that she had been feeling dizzy for 6 or 7 years, including a presyncope spell in the past week while working.  She also reported reduced vision with blurriness, but no loss of vision.  She was diagnosed with diabetes mellitus and hypertension.  No abnormalities in muscular strength, sensation or swelling were noted.  (Tr. 181-182)

The Franklin treatment records dated October 31, 2002 reflect that Plaintiff reported problems sleeping, nasal congestion and urinary frequency, with mild burning.  It is noted that she had no chest pain or shortness of breath.  Plaintiff's physical examination was normal except for nasal congestion.  She was diagnosed with hypertension, diabetes mellitus, dysuria, insomnia and urinary tract infection, and was counseled regarding medication usage and side effects, low fat diet, weight loss, and the need to stop smoking. Her medications were listed as Norvasc, Accupril, Glucotrol, Pneumovac, Bactrim and Elavil.  (Tr. 179-180).

Plaintiff returned to Franklin on February 6, 2003.  She reported insomnia and cough for two to three days.  Her physical examination was normal, but it was noted that her neck was supple and left lobe of her thyroid was palpable.  Her pain intensity score was "0."  Plaintiff was diagnosed with hypertension, diabetes

mellitus, insomnia and bronchitis, and was prescribed Doxy and given a trial of Zoloft.  (Tr. 177-178).

In a follow-up visit to Franklin on May 15, 2003, Plaintiff reported discontinued Accupril because it made her sick, and she complained of pigment in her lower extremity.  Plaintiff's physical examination was normal, and her pain intensity score was "0." (Tr. 175-176).  During her June 2, 2003, visit to Franklin, Plaintiff again complained of insomnia, and reported that the Zoloft did not help.  Her physical examination was normal, her pain intensity score was "0," and she was diagnosed with hypertension, diabetes mellitus, insomnia, and airway resistance.  (Tr. 173-174).

Plaintiff was next treated at Franklin on September 2, 2003. She reported discomfort in her lower back.  Her physical examination was normal except for mild tenderness bilaterally in her lumbar paraspinal area. No spinal tenderness was observed.  Plaintiff's intensity pain score was "1," and she was diagnosed with diabetes mellitus, hypertension and low back pain.  Her medications were listed as Glucophage, Glucotrol, Lotrel, Lasix and Ultram.  (Tr. 171-172).

Plaintiff was treated at Franklin for a check-up on January 21, 2004.  She reported ongoing dizziness, low back pain, problems walking and weight loss.  Her physical exam was normal except for serous effusion bilaterally, right more than left, and plantar callouses.  Her intensity pain score was "5."  Plaintiff was

diagnosed with diabetes mellitus, hypertension, plantar callous and dizziness/ vertigo/airways resistance.  She was again counseled to stop smoking.  (Tr. 169-170).

Plaintiff presented to Mobile Infirmary Emergency Room on February 1, 2004.  She reported that she hurt her left foot when she tripped and fell.  Her physical exam showed that she was alert and in no distress.  Plaintiff had pain in her left foot, was unable to bear weight and had limited range of motion.  She was diagnosed with left ankle fracture, her ankle was placed in a splint, and she was prescribed crutches and Lortab.  The x-ray of her left ankle showed a fracture.  (Tr. 157-163).

Plaintiff was treated at Mobile Family Physicians on February 26, 2004.  She reported difficulty swallowing, sore throat, and popping ears, 101 fever and chills.  On physical examination, she had very edematous nasal turbinates with very red throat and copious post nasal drip.  She was diagnosed with acute pharyngitis, and prescribed Rocephin, Dexamethasone, Z-Pak, Pancof, Alfen DM and Tylenol. (Tr. 249).  An x-ray of her paranasal sinuses on this day was normal (Tr. 266).

Plaintiff returned to Franklin on May 4, 2004.  She reported decreased back pain, dizziness, swelling in the left leg, and problems hearing.  Her physical examination was normal except for right ear with chronic change.  Her intensity pain score was "4." She was diagnosed with hypertension, diabetes mellitus, and

vertigo/airways resistance.  She was again counseled to stop smoking.  (Tr. 167-168).  A Pain Assessment Tool dated the same day reflects that Plaintiff had sharp pain in her lower back that started a long time ago, that sitting up or walking makes the pain works, and that she takes prescribed medications for treatment of the pain.  Plaintiff pain was listed as a "4" on a Pain Assessment Scale of 1 to 10.  (Tr. 166).

In a follow-up visit on June 8, 2004, Plaintiff reported that her back pain had decreased, and assigned her pain a "1" on the intensity pain score.  She also reported that  Celebrex was not helping.  Her physical examination was normal except for spinal tenderness and paraspinal tension.  Plaintiff was diagnosed with uncontrolled hypertension and her non-compliance was noted.  She was also diagnosed with diabetes mellitus and low back pain.  (Tr. 164-165).

On May 6, 2004, Plaintiff was evaluated at the Foot Care Clinic.  On physical examination of her lower extremities, it was noted that she had long, thick mycotic toenails, and dry skin, with preulcertive callouses.  She was educated about proper foot, self screening, proper shoe selection and the signs and symptoms of infection.  In July of 2004, Plaintiff was fitted for diabetic shoes. (Tr. 196-206, 300-301).  Notes from an office visit on December 3, 2004, reflect that Plaintiff had large and small plantar calluses on her right foot.  Physical examination of her lower

11

extremities was otherwise normal except for mycotic toenails. (Tr. 298). Treatment records from March 28, 2005 and August 15, 2005 reflect an increase in Plaintiff's blood sugar, very long mycotic toenails and right foot calluses. (Tr. 295-296). Plaintiff was fitted with diabetic shoes on July 21, 2004 and again on December 5, 2005 (Tr. 294, 300).

Plaintiff returned to Mobile Family Physicians for treatment on June 28, 2004. Plaintiff reported chest congestion for two weeks, with wheezing and shortness of breath, and productive cough with yellow/green sputum. The notes reflect that Plaintiff reported smoking ½ pack of cigarettes per day. Her physical exam was normal except for pain on palpation of left upper chest similar to chest pain she had experienced earlier. She was prescribed Amoxicillin, Bidex DM and Mobic, and instructed to return in two weeks. (Tr. 247-248). A chest x-ray on this day was normal (Tr. 262), and an unconfirmed analysis of an electrocardiogram on this day showed sinus bradycardia and the voltage criteria for left ventricular hypertrophy (Tr. 263).

On August 2, 2004, Plaintiff underwent a mental examination by Lucille T. Williams, Psy.D. at the request of the Agency. (Tr. 207-208). On examination, Dr. Williams noted that Plaintiff's grooming and hygiene were good, that she had a slow shuffling gait and no speech or vision problems except diminished hearing in her right ear. Dr. Williams further noted that Plaintiff used a non-physician

ordered cane.  Dr. Williams observed Plaintiff's affect appropriate
to content of thought and conversation, that she did not appear
anxious, and that her mood seemed mildly depressed.  She also noted
that Plaintiff appeared oriented to person, time, place and purpose.
Dr. Williams also noted that Plaintiff's thought processes were
grossly intact, there were no loose associations, tangential or
circumstantial thinking.  Plaintiff did not appear confused. Her
conversation was normal, there were no ideas of reference, phobias,
obsessions, compulsions, hallucinations or delusions, and Plaintiff
denied any suicidal ideation.  Plaintiff's insight, understanding
of herself, and her judgment were fair.  Dr. Williams opined that
Plaintiff's estimated intelligence was low average and that
Plaintiff was capable of managing her funds.  Plaintiff was
diagnosed with depressive disorder.  (Tr. 207-209).

     Plaintiff returned to Franklin for treatment on August 10,
2004.  Plaintiff reported back pain, and that Celebrex was not
relieving her pain.  Her physical examination was normal except for
paraspinal tension in the lumbar area.  She was diagnosed with low
back pain, hypertension, and diabetes mellitus. Concern regarding
Plaintiff's compliance was noted.  (Tr. 242-243).

     In a Mental Residual Functional Capacity Assessment dated
October 29, 2004 and prepared by William Lynn, Ph.D., at the request
of the Agency, Dr. Lynn opined that Plaintiff is moderately limited
in her ability to understand and remember detailed instructions, to

carry out detailed instructions, to maintain attention and concentration for extended periods and to respond appropriately to changes in the work setting, and is not significantly limited in any other mental activity. (Tr. 210-211). Dr. Lynn concluded that Plaintiff has the ability to understand, remember and carry out very short and simple instructions and to attend for two hours periods, that her contact with the general public should be infrequent and that changes in the work setting should be minimal. (Tr. 212).

In a Psychiatric Review Technique dated October 29, 2004, Dr. Lynn opined that Plaintiff is mildly restricted in her activities of daily living, mildly limited in her ability to maintain social functioning, moderately limited in her ability to maintain concentration, persistence and pace, and had no episodes of decompensation. (Tr, 224).

A Physical Residual Functional Capacity Assessment dated November 1, 2000 and completed by a Medical Consultant for the Agency, the Consultant opined that Plaintiff has the ability to lift or carry 20 pounds occasionally and 10 pounds frequently, and to stand, walk or sit about six hours in an eight-hour workday. Her ability to push or pull hand or foot controls is unlimited, and she has no postural, manipulative, visual, communicative or environmental limitations. The Medical Consultant listed Plaintiff's diagnoses as diabetes, hypertension, back, feet, leg, and hip pain, and depression, and opined that she is limited to

14

light, unskilled work.  (Tr. 228-236).

Plaintiff sought treatment at Franklin on November 24, 2004. She reported ringing in her right ear, low back pain, and nervousness. Plaintiff's physical examination was normal, and she was diagnosed with hypertension, diabetes mellitus, low back pain and anxiety.  She was counseled regarding exercise.  (Tr. 238-239).

Plaintiff was evaluated at Mobile Family Physicians on February 16, 2005 for management of medications.  She reported that she had been out of Lotrel, and was almost out of Glucotrol.  She also reported wheezing and congestion, increased pain and dysuria while urinating, and moderately productive cough. On physical examination, it was noted that Plaintiff was in moderate respiratory distress. Her tympanic membranes were cloudy, and she had 3+ post nasal drip and 3+ pharyngitis and rhinorrhea.  Her lungs showed wheezes in the right hilar area and she had a deep productive cough.  Her upper and lower extremities were within normal limits.  The notes also reflect that a chest x-ray showed evidence of early bronchitis, and Plaintiff's lab results showed that she had not been adhering strictly to her diet.  (Tr. 247).

In treatment notes from Mobile Mental Health ("MMH") dated May 19, 2005, therapist Emma Davis, M.S., observed that Plaintiff had appropriate appearance and grooming, normal behavior, and an irritable and sad mood.  Her affect was sad, she was verbal when prompted and her appetite was poor.  Plaintiff reported that she has

difficulty falling and staying asleep, that she sleeps restlessly with nightmares, and that she awakes early. She reported no suicidal or homicidal thoughts, but did report auditory and visual hallucinations, impaired memory, racing thoughts and impaired concentration. (Tr. 276). Plaintiff returned to MMH on June 28, 2005, and Ms. Davis observed that Plaintiff was agitated, irritable, and crying. Plaintiff reported poor appetite, recent weight change, and poor sleep. She also reported suicidal thoughts, auditory and visual hallucinations, impaired memory, and racing thoughts. Ms. Davis noted that Plaintiff also reported losing about 15 pounds in a month and a half. (Tr. 275).

During Plaintiff's MMH therapy session on July 25, 2005, the notes reflect that Plaintiff was agitated, irritable, and sad. Plaintiff reported poor appetite and sleep with nightmares. She reported no suicidal or homicidal thoughts, but auditory and visual hallucinations, impaired memory, racing thoughts and impaired concentration. Ms. Davis noted that Plaintiff has depression symptoms, and major medical problems. (Tr. 274).

In a MMH 90-day Review dated August 8, 2005, Plaintiff was diagnosed with major depression. (Tr. 273). A MMH Psychiatric Evaluation dated August 22, 2005 reflects that Plaintiff reported that she cannot cope, that she does not enjoy the things she used to enjoy, that she has decreased sleep and increased nervousness and that she cries a lot. She stated that she has had the symptoms for

16

about two years.  On mental exam, Plaintiff was described as neatly dressed and cooperative, with constricted affect and speech within normal limits.  She stated that she feels someone is in her house, and that she hears voices at night.  She memory was intact, and her insight and judgment was good.  Plaintiff was diagnosed with moderate and recurrent major depressive disorder, and was prescribed Lexapro and Tryodene.  (Tr. 269-272).

In a therapy session on August 22, 2005, Ms. Davis observed that Plaintiff's appearance was appropriate, and that she was agitated, irritable, and sad.  Plaintiff reported fair appetite and poor sleep.  It was noted that Plaintiff had no suicidal or homicidal thoughts, but auditory and visual hallucinations.  She also had impaired memory and concentration, and racing thoughts. Ms. Davis noted that Plaintiff reported being unable to cope, and difficulty with family and friends.  (Tr. 268).

C.E. Smith, M.D., LLC, prepared a mental evaluation dated December 16, 2005 at the request of the Agency. Dr. Smith observed that Plaintiff was sluggish in manner, that she moved in her chair as though she were in pain, and that she was soft spoken and often gave vague answers to questions.  He further reported that Plaintiff's articulation was "good enough," and that she was fairly well spoken.  He described her as relevant and coherent, with no indication of thinking disorder or hallucinations.  He described her as mildly depressed with little range of affect.  He reported that

Plaintiff's effort on cognitive testing was "less than optimal." He also noted that she was well-oriented in all spheres. In summary, Dr. Smith stated that Plaintiff made a good presentation, that she understood and remembered and carried out even complex instructions, that she was alert and in contact and that she appeared depressed. He noted that he saw no evidence of a thinking disorder or organicity, and that she described a fair range of effective activity through her life until recent years, and had only been receiving psychiatric treatment for the past 7 months. He diagnosed Plaintiff with chronic adjustment disorder with depressed mood, related to health and personal problems. (Tr. 277-279).

Dr. Smith completed a Medical Source Opinion on December 12, 2005. He opined that Plaintiff is moderately limited in her ability to maintain social functioning, and mildly limited in her ability to respond appropriately to supervisors, co-workers, and customers or other members of the general public. He further opined that Plaintiff is mildly limited in her ability to use judgment in detailed or complex work-related decisions, deal with changes in a routine work setting, understand, remember, and carry out detailed or complex instructions, maintain attention, concentration or pace for periods of at least two hours and maintain activities of daily living. (Tr. 280-281).

Plaintiff was treated at Mobile Family Physicians on July 29, 2005. She reported acute upper respiratory infection with marked

cough and congestion and right otitis media; insomnia; and increasing back and right flank pain that radiates down the right sciatic nerve.  Her review of symptoms was otherwise unremarkable. On physical examination, it was noted that Plaintiff was in moderate respiratory distress, that her tympanic membranes were cloudy, and she had 3+ post nasal drip and 3+ pharyngitis and rhinorrhea.  Her lungs showed fine referred breath sounds, and her upper and lower extremities were within normal limits.  She was diagnosed with right sciatic neuritis, degenerative lumbar disk disease, dysuria, non-insulin -dependent diabetes mellitus, moderate hypertension, allergic rhinitis, right otitis externa, insomnia and low back pain. (Tr. 245-246).  A lumbar spine x-ray on this day showed a curve to the dorsal spine, with convexity to the right; degenerative disc disease with disc space narrowing, central vacuum phenomenon and osteophyte formation present at L4-5.  (Tr. 253).

Plaintiff returned to Mobile Family Physicians on October 3, 2005.  She reported head and chest congestion, productive cough with thick gold mucous for several days, and pain under her rib cage and in the left upper quadrant area, with pain on a deep breath. A physical examination revealed no apparent distress, mild nasal congestion, left lateral chest wall tenderness and left upper quadrant abdominal tenderness.  (Tr. 283).  A chest x-ray on this day was normal but for chronic lung changes, and an abdominal x-ray showed a dense stool, and otherwise non-specific gas patterns.  (Tr.

283, 287).

In a therapy session at MMH on January 23, 2006, therapist
James White observed that Plaintiff's appearance was appropriate,
and that her mood, affect, and speech were normal. Her appetite and
sleep were good, she had no suicide or homicidal thoughts, and her
perceptions were within normal limits, with some auditory
hallucinations. Her memory and concentration were unimpaired, and
her thoughts were logical and coherent. Her listed medications were
Lexapro and Trazodone. (Tr. 289).

Also on January 23, 2006, Ms. Davis reported that Plaintiff's
appearance was appropriate, her behavior was normal, her mood was
irritable and her affect was appropriate to the situation. No
speech impairment was noted, and her appetite and sleep were
reported as poor. Plaintiff reported no suicidal or homicidal
thoughts, but did report auditory and visual hallucinations. Ms.
Davis noted that Plaintiff's memory and concentration were impaired,
and that she had racing thoughts. Ms Davis diagnosed Plaintiff with
major depressive symptoms increased with family stressors. (Tr.
290).

MMH therapist James White and psychiatrist Mariane Saitz, M.D.,
completed a Supplemental Questionnaire as to Mental Residual
Functional Capacity on February 10, 2006. They opined that
Plaintiff is moderately restricted in her activities of daily
living, in maintaining social functioning and in concentration,

persistence or pace resulting in frequent failure to complete tasks
in a timely manner.  According to Mr. White and Dr. Saitz, Plaintiff
has a moderate number of episodes of deterioration or decompensation
in work or work-like settings which cause her to withdraw from that
situation or to experience exacerbation of signs and symptoms.  They
further opined that Plaintiff is moderately limited in her ability
to understand, carry out, and remember instructions in a work
setting, to respond appropriately to supervision and co-workers in
a work setting, and to perform simple or repetitive tasks in a work
setting.  They reported that the duration of the impairment has
lasted or can be expected to last for 12 months or longer, that the
earliest date this severity has existed is 2003, that a
psychological evaluation was obtained, and that Plaintiff
experiences sedative side effects from her medication.  (Tr. 291-
292, 303).

      **1.**   **Whether the ALJ erred by failing to give
controlling weight to Plaintiff's treating
physician.**

Plaintiff argues that the ALJ erred in not affording Dr.
Saitz's February 10, 2006 Residual Functional Capacities Evaluation
the substantial weight due the opinions of a treating physician.
(Tr. 291-293, Doc. 13 at 3-5).  According to Plaintiff, Dr. Saitz
opined that Plaintiff is moderately impaired in all areas of
functioning, and that Plaintiff would experience episodes of
decompensation or deterioration in work or work-like situations that

would affect but not preclude her ability to function.  She argues that the ALJ's determination that Plaintiff would not be expected to have any periods of decompensation conflicts with Dr. Saitz's opinion and is error.  (Doc. 13 at 3-5).  Defendant argues that the record does not demonstrate that Dr. Saitz was Plaintiff's treating physician in that she never examined Plaintiff, never provided Plaintiff treatment, and did not have an ongoing relationship with Plaintiff.  Defendant further argues that even if Dr. Saitz were Plaintiff's treating physician, good cause exists for discrediting her opinion.  (Doc. 14 at 5-7).

In finding that the Plaintiff would not be expected to have periods of decompensation, the ALJ stated as follows:

> Despite De. Saitz's assessment that the degree to which the claimant could be expected to have episodes of deterioration or decompensation in work or work-like settings . . . there has been no probative evidence to show that the claimant has required hospitalization or emergency room treatment as a result of a loss in adaptive functioning or exacerbation of her symptomatology at any time during the period under adjudication.  The undersigned finds, therefore, that there is no evidence that the claimant would be expected to have periods of decompensation.

(Tr. 42).  First of all, the Defendant is correct that the record does not support Plaintiff's assertion that Dr. Saitz was Plaintiff's treating physician.  According to 20 C.F.R. 404.1527(d), in determining disability, more weight is given to an examining source than to a non-examining one, and the opinion of a

treating source that is well-supported by "medically acceptable clinical and laboratory diagnostic techniques" and is not inconsistent with the record, is given controlling weight.

The MMH records do not reflect that Plaintiff was treated by Dr. Saitz.  In fact, a searching review of Plaintiff's treatment records from MMH does not indicate that Plaintiff was ever examined by Dr. Saitz.  The treatment records do not include a single reference to Dr. Saitz.  The only two documents included in the record that are signed by Dr. Saitz are the Supplemental Questionnaire dated February 10, 2006 and a March 3, 2006 letter in which Dr. Saitz confirms that she signed the Supplemental Questionnaire. (Tr. 291-292, 303).  It is noteworthy that while the Supplementary Questionnaire states that it is "designed to amplify" a narrative report, no narrative report was included and Dr. Saitz does not explain the basis for her opinion. Indeed, there is no indication that Dr. Saitz even reviewed Plaintiff's MMH treatment notes in arriving at her opinion, let alone that she treated her. Accordingly, the ALJ's failure to assign any weight to Dr. Saitz's opinion on the issue of Plaintiff's expected periods of decompensation is supported by substantial evidence and is not error.

Secondly, even if Dr. Saitz's opinion were considered the opinion of a treating physician, the ALJ's decision not to accord that opinion any weight is not error.  It is well settled that

"[t]he opinion of a treating physician is entitled to substantial weight unless good cause exists for not heeding the treating physician's diagnosis." <u>Edwards v. Sullivan</u>, 937 F.2d 580, 583 (11th Cir. 1991). <u>See</u>, <u>e.g.</u>, <u>Crawford v. Commissioner of Social Security</u>, 363 F.3d 1155, 1159-1160 (11th Cir. 2004); <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1240-1241 (11th Cir. 2004); <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1439-1441 (11th Cir. 1997); 20 C.F.R. § 404.1527(d)(2).   "[G]ood cause exists when the (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." <u>Phillips</u>, 357 F.3d at 1240-1241 (citing to <u>Lewis</u>, 125 F.3d at 1440). <u>See also</u> <u>Edwards v. Sullivan</u>, 937 F.2d 580 (11th Cir. 1991) (holding that the ALJ properly discounted a treating physician's report where the physician was unsure of the accuracy of his findings and statements).  If the ALJ disregards or accords less weight to the opinion of a treating physician, the ALJ must clearly articulate his reasons, and the failure to do so is reversible error. <u>MacGregor v. Bowen</u>, 786 F. 2d 1050, 1053 (11th Cir. 1986).

A review of record reflects that Plaintiff has not reported any episodes of decompensation to her therapists at MMH.  Moreover, there is nothing in the MMH psychological evaluation dated August 22, 2005 which suggests that Plaintiff experiences periods of

decompression.   In fact, the evaluation reflects that Plaintiff's memory was intact, her speech was within normal limits and her insight and judgment were good.   Additionally, Dr. Williams conducted a Mental Examination at the request of the Agency on August 2, 2004, and noted that Plaintiff feels sad and lonely every day, but that her thought processes were grossly intact, her insight, understanding of herself and judgment were fair, and that she was seen as able to manage her funds.   (Tr. 207-209). Additionally, Dr. Lynn examined Plaintiff on December 12, 2005, and opined that Plaintiff had not experienced any episodes of decompensation.   (Tr. 277-279, 280-281).   The only evidence included in the record that Plaintiff is expected to have a moderate number of episodes of decompensation is the opinion of Dr. Saitz.   Good cause exists for discounting Dr. Saitz's opinion that Plaintiff would have a moderate number of episodes of decompensation, in that the opinion is not bolstered by the evidence, and in fact, the record supports a contrary finding.

    **2.**   **<u>Whether the ALJ erred by failing to pose a complete hypothetical to the vocational expert which included all of Plaintiff's impairments.</u>**

Plaintiff argues that the ALJ erred by failing to pose a complete hypothetical to the vocational expert ("VE"). Specifically, Plaintiff argues that the ALJ failed to include in his hypothetical to the VE episodes of decompensation or deterioration in a work or work-like setting, a limitation that Dr.

Saitz assigned Plaintiff in the February 10, 2006 Supplemental Questionnaire (Tr. 291).

In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's credible limitations and impairments. <u>See</u>, <u>e.g.</u>, <u>Wilson v. Barnhart</u>, 284 F.3d 1219, 1227 (11th Cir. 2002); <u>Jones v. Apfel</u>, 190 F.3d 1224, 1229 (11th Cir. 1999). While it is true that the ALJ did not include episodes of decompensation in the hypothetical posed to the VE, the failure to do so was not error. The ALJ found that Plaintiff would not be expected to have any episodes of decompensation, and as articulated above, the ALJ's finding on this issue is supported by substantial evidence. As a result, the ALJ did not err by failing to include a limitation that is not supported by the record.

> **3.**   **Whether the Appeals Council erred by denying review of the ALJ decision after considering new evidence.**

Plaintiff contends that the Appeals Council ("AC") erred in denying review of the ALJ decision in light of David C. Ross, M.D.'s letter dated February 6, 2007, which was submitted to the AC in support of Plaintiff's appeal. Because Plaintiff is appealing the AC's decision denying review, this Court must review the record as it existed before the AC. The record before the AC included not only the record before that was before the ALJ, it also includes the letter from Dr. Ross. <u>See</u>, <u>e.g.</u>, <u>Newsome v.</u>

<u>Barnhart</u>, 444 F. Supp. 2d 1195, 1202 (M.D. Ala. 2006); <u>Fry v.</u>
<u>Massanari</u>, 209 F. Supp. 2d 1246, 1252 (N.D. Ala. 2001); <u>Falge v.</u>
<u>Apfel</u>, 150 F.3d 1320, 1324 (11th Cir. 1998).   In the Eleventh
Circuit, to warrant remand for consideration of new evidence, a
plaintiff must establish that 1) new, non-cumulative[4] evidence
exists, 2) the evidence is material (<u>i.e.</u>, relevant and probative
so that a reasonable possibility exists that it would change the
administrative result);[5] and 3) good cause[6] exists for the failure
to incorporate the evidence into the record in the ALJ's
proceedings.  <u>See</u>, <u>e.g.</u>, <u>Magill v. Commissioner of Soc. Sec.</u>, 147
Fed. Appx. 92, *95-96 (11th Cir. 2005) (per curiam); <u>Vega v.</u>
<u>Commissioner of Soc. Sec.</u>, 265 F.3d 1214, 1218-1219 (11th Cir.
2001); <u>Falge v. Apfel</u>, 150 F.3d 1320, 1323-1324 (11th Cir. 1998);
<u>Keeton v. Dep't of Health and Human Services</u>, 21 F.3d 1064, 1066
(11th Cir. 1994).

The letter at issue is dated February 6, 2007, and states that

---

[4]The non-cumulative requirement is satisfied by the
production of new evidence not contained in the administrative
record. <u>Cannon v. Bowen</u>, 858 F.2d 1541, 1546 (11th Cir. 1988).
Such evidence must relate to the time period on or before the
date of the ALJ's decision. 20 C.F.R. § 404.970(b).  <u>See</u> <u>also</u>
<u>Falge</u>, 150 F.3d at 1324.

[5]The materiality requirement is satisfied if a reasonable
possibility exists that new evidence would change the
administrative result.  <u>Falge</u>, 150 F.3d at 1323.

[6]The good cause requirement is satisfied when the evidence
did not exist at the time of the administrative proceedings.
<u>Cannon</u>, 858 F.2d at 1546.  <u>Sullivan v. Apfel</u>, 2000 WL 1568330, *8
(S.D. Ala. Oct. 2, 2000).

Plaintiff has a 10-year history of diabetes, "complicated over the past six months with severe myalgias, proximal muscle weakness and about a 40-50 pound weight loss." Dr. Ross states that these conditions are "associated with" out-of-control diabetes and are consistent with diabetic amyotrophy.[7] He also states that Plaintiff suffers from depression, for which she takes Abilify, Lexapro and Trazodone and that she is treated at MMH. He further notes that Plaintiff has hypertension, for which she takes Lotrel. Dr. Ross notes that Plaintiff is easily fatigued and that she has been unable to perform her usual occupation as a housekeeper. He opines that she is "at this time" completely disabled. (Tr. 319).

Applying the Eleventh Circuit test set forth above, a review of the administrative record reveals that Dr. Ross' letter evidence was not included in the record before the ALJ so it is clearly new. Likewise, good cause exists for the failure to present the letter to the ALJ as this letter is dated February 6, 2007, almost six months after the date of the ALJ's decision dated August 25, 2006. While this evidence meets two parts of the test, it fails to meet the materiality requirement. First of all, Dr. Ross states that he did not begin treating Plaintiff until December 21, 2006, four months after the ALJ's opinion. Secondly, Dr. Ross's summary opinion regarding Plaintiff's inability to perform her past work is

---

[7]Amyotrophy is atrophy of a muscle. www.merriam-webster.com. (Last visited October 27, 2008).

an opinion about her ability to work as of that day, and does not refer to the period of adjudication, which ended almost six months prior.  Indeed, his only reference to Plaintiff's condition during the period at issue is his statement that Plaintiff's 10-year history of diabetes has been "complicated over the past six months by myalgias, proximal muscle weakness, and about a 40-50 pound weight loss."  This statement simply does not speak to Plaintiff's limitations during the period at issue.  As a result, Dr. Ross' letter fails to meet the materiality requirement.  Thus, after considering this new evidence, the AC did not err in denying review of the ALJ decision as this evidence is not material.

**V.**  **Conclusion**

For the reasons set forth, and upon careful consideration of the administrative record and memoranda of the parties, it is **ORDERED** that the decision of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits and supplemental security income, is due to be **AFFIRMED.**

DONE this **15th** day of **June, 2009.**

                         **/s/ SONJA F. BIVINS**
                  **UNITED STATES MAGISTRATE JUDGE**